Good morning, everyone. Please be seated. All right, there's something missing here. You might be able to tell. Judge Jordan, our presiding judge, who is resident in Miami, had to flee the weather or weather over connections and so he's with us on the phone today. And so he will occasionally you will hear the voice of God that will be Judge Jordan. So, before we conclude any of the questioning, we're going to pause to make sure that he has had an opportunity to ask his questions. Okay. Yeah, please. Oh yeah. Yeah, yeah. So I just, I'm making this pitch all week. So this is our second sitting in Birmingham this year. We are evaluating whether we should regularize having these sittings in this new location. You as counsel will get a survey after this hearing about your experience doing this, and it would just really help us if you would fill that out. It's anonymous, and it just asks you some pretty simple questions. So, just please, if you could fill out that survey. Thanks. All right, very well so before we start just a few rules of the road. Number one, please know, as you're making your argument to us that we have read the stuff we've read the briefs the underlying cases the statutes the record materials so don't waste your own time with a bunch of factual and procedural ramp up. You have a limited time before us just go straight to the heart of your case and start telling us why you think you should win. Number two, you'll understand the traffic light system, green go yellow slow down, red, please stop. Neither judge Jordan who is our presider, nor I frankly are great about stopping you in the middle of a syllable. So please begin to read body language, when your time is up and know that your time is up. If it gets really bad. I'll begin to wave my arms or something to tell you to stop. All right, very well let's call the first case which is 23 10781 United States of America versus Murphy. The appellants we have Mr Yarbrough Mr. Hart, the appellee Mr Ward, Mr Yarbrough you're going to go first. Very well. Please the court I am Ed Yarbrough of the Tennessee bar and I appreciate the opportunity to speak with the court this morning against about the case of the United States versus Mark Anthony Murphy, I realized the truth of what your honor just said about the facts and that you're familiar with them but I think it's important in this particular case to understand who Dr. Murphy is he was born in 1957 in Bessemer just a few miles west of where I'm standing right now. And through hard work and good education he became a physician, starting his practice in Tennessee and then opening clinics here in Alabama indicator and Huntsville. In other places. I mentioned this because in this particular case, the government's investigation began, according to the testimony basically because of the quantity of opioids that were being prescribed and Dr Murphy's clinics. We contend and we did contend that trial and in the appellate brief that much of this was a result of the fact that his patients were almost all referred to him by other physicians. So these were the problem patients. These are the folks who had already been using opioids, the controlling their use and treating them in a responsible manner became difficult. And so Dr Murphy may have in fact been a victim of patient dumping, so to speak. The importance of that is simply this may please the court. This is a circumstantial evidence case this is not a situation in which we have video of drugs being sold out the back door. We don't have a direct witness, other than perhaps the experts who testified from records that Dr Murphy at any time issued an unauthorized prescription. What we, what about what about the pre signing of prescriptions. I'm sorry, I thought that was evidence in the record that he pre signed the prescriptions. There was there was allegation of sloppiness in the, in the office. What was pre signing a sloppiness, or is that evidence that he was signing prescriptions without actually examining government was allowed to prove that your honor but in order to bolster their circumstantial evidence case, but it's not proof that there was actual criminal intent on behalf of Dr Murphy because, as the court well knows in the ruin trilogy. We finally resolved the issue that actual criminal intent is necessary to prove a federal crime. Right. Isn't that a jury question I mean, I guess the the ruin case was about a jury instruction, not about this particular case the jury instruction as to the substance of account was erroneous. And even though two out of three substantive counts resulted in acquittal. Judge Kugler was compelled by the ruin decision to dismiss or vacate the conviction on the third count because of the erroneous jury instruction and one of our, one of our points in the, in the appeal, the court will indulge me is simply that so on the jury instruction issue. I just want to please go forward just after you answer this question because I thought you can see it in your brief that our decision and ruin three foreclosure argument on the jury instruction we understand that the government has said that the jury instruction used on the conspiracy client was almost identical, or worse to that effect, which I guess means close enough for government work but but in our view, it's not just the instruction. It's the fact that we were not allowed to counter the government's very broad brush proof about the type of care Dr Murphy was rendering with good care proof we specifically raised this point, it just seems to me that we're sort of moving and then maybe this isn't unfair but we're moving from sort of one argument to another to another so in response to judge brushes question about sufficiency of the evidence you started talking about the jury instruction and now in response to his question about the jury instruction you started talking about your failure, sort of be able to put on the evidence of a complete defense. I worry that the target here is kind of moving with court permission I think that I think they're all tied together you can't have a faulty jury instruction on one count, the jury is going to presume to have followed it. And that's so bad that we have to vacate one conviction, but then say that it's good enough for these other counts, where the, where the jury instruction satisfied run mostly our contention is that when you try to conflate those, you've got a situation where the jury verdict cannot be trusted, particularly when the proof is all circumstantial. They're talking about sloppiness are talking about overcrowding and all this sort of thing. And the judge precluded us from bringing in counterproof to show that the circumstances in the vast majority of the cases were perfectly normal and fine. In fact, many patients praise Dr. Murphy for what he did, allowing them to get off of opioids. When, when possible. And so we have a one sided ruling on the evidence. How does on the evidentiary questions I'm going to ask you one about the evidentiary question let's see if we can stick on that one. How does the good character evidence, showing that he did in fact do a good job with some patients undermine the government's argument that he did a bad job with other patients, what's the connection, with all respect, it was not character. Good care. The government's talked about a pill mill they talked about a profit center. They talked about overcrowding multiple times. And so that creates the idea that this was just a helter skelter place where nobody was paying attention to the medical necessities. When in reality, they only put them, they only talked about 12 patients, and all the hundreds and perhaps thousands of patients Dr Murphy treated. And at one point, the government actually said that all the other patients were not an issue in their brief. Well, they are an issue because they have painted this broad brush about a bad clinic. And of course the jury takes all that in and then there's no rebuttal to it because the judge ruled that we couldn't put on good care, good care proof. So, to us that is a violation of evidentiary rulings that affected the outcome of this particular case. The other thing about good faith court is simply this subjective good faith is now defense. In these cases, in the original case we know that the objective standard of, you know, what's good in medical care and so on and so forth was accepted. But finally, the court, the Supreme Court said that subjective good faith was a defense, much like in a tax case or other cases that we prosecuted in federal court. So, it seems to us that if that's true, that a species of good faith is that he was doing a good job for the vast majority of his patients, and that these 12 or so patients that they cherry pick is not a credible or a thorough picture of what was going on. And again, against the backdrop of the general proof that this was a bad place that people were lined up in the parking lot was crowded and so on and so forth. Now I realize I'm about to. Mr. Tartt, I would like to ask you one, one additional question. Yes, I'm sorry. Are you. So it's your brief, I think that I have a question about so on page 63 and footnote seven of your brief. And you can look at this if you don't have it in front of you. You say that if you basically say the district court did the sentencing guidelines calculation incorrectly. And so the district court here found that if it granted all your objections to the guidelines calculations. Yes, that there would be a, a 35 offense conduct. And you say in footnote seven, that the offense conduct would have actually been 32. And I cannot for the life of me figure out how you got to that calculation, and quite candidly Your Honor I can't either standing here today I've not focused on that. I will say this about take a look at your brief when you sit down, and maybe you can answer how you got there. I'll try to do that. Thank you. Do you have any questions, Mr Arbor. No. Okay, very well. Thank you.  All right, Mr Tartt. Let's hear from you. Morning, Your Honor, may it please the court. I'd like to go to Judge Brasher's question about the conspiracy instructions and that we conceded in our brief that it's foreclosed by circuit precedent. While Ruhan three did speak directly to extending 841 to 846 and said that in that case it was not appropriate. The facts of this case are a little bit different with particular instructions. Ruhan three held that conspiracy, the conspiracy instructions, they are required that the defendant knew that they were unauthorized, right? The lotto right after Ruhan three said that that was because the jury instructions in Ruhan three conveyed the adequate committance rate. And that was it was because it was required in the lotto that they find subjective intent right on authorization. Here, the district court defined what unlawful meant in defining unlawful is without legitimate medical purpose and outside the course of usual professional practice. And then it further defined that professional practices generally accepted standards in the United States, which is what Ruhan in the Supreme Court said you cannot do incorrect instruction. District Court knew that vacated 841 because of that incorrect instruction. The point here is that the 846 instructions referenced those 841 instructions about a dozen times in the conspiracy instructions that you're required to find that the defendant unlawfully had the purpose of the plan right and willfully joined. And then it defined willfully as acting to do something that the law forbids. Well, what does law forbid? The court told the jury legitimate medical purpose outside the course of professional practice within that framework of the objective standard. That's an incorrect statement of the law after Ruhan. And so every point that you get in the elements of the conspiracy refer back to the 841 instruction. Unauthorized, authorized is not mentioned anywhere in the instructions in this case, like it was in Ruhan 3 and the Lotto Act. And so you have basically a circular kind of argument where you have to find unlawfulness defined incorrectly, the elements defined incorrectly when you get to it. And so you can't have a conspiracy, a knowing plan in there to agree a plan when it rests on that incorrect instruction. And so I think it's a little bit different than Ruhan 3 and the Lotto Act. I'd like to speak a little bit about the tax issues that Miss Murphy had as well. We're asking for a new trial for two reasons. There was insufficient evidence and that the mistrial should have been granted the mistrial. You had the tax accountant that testified to information nobody else did on that issue. Answer this for me, because I look because I looked at the transcript of that person's testimony and I didn't see anything in that. You know, the sort of the abbreviated part of that testimony that seemed particularly problematic for your client, I guess. But what is it that he said that he was so problematic such that a mistrial should have been granted? There are a few different things, your honor. But the main point that he testified about that nobody else did was that Jennifer Murphy provided him with records, provided him with information to prepare the returns. There's no other information in the record that she even knew about tax returns. Right. And the court did give a curative instruction and said disregard all of that testimony. We're saying that's ineffective. So you're saying so you're saying just so I understand, you're saying that there's nothing else in the record that tagged her with the preparation of the tax returns. That's correct. That's correct. And that's on top of the fact that tax returns weren't signed. You know, they're jumping inference on inference to get through the accountant that she helped prepare their terms, that she authorized them to be filed. There's nothing in the record but for his testimony was were stricken and it was ineffective because, I mean, the jury came back the next day. And so who was that that you told us to disregard that testimony that submitted a question? They couldn't even remember the instruction the next day. And so we don't think that cured the prejudice. And so that's why we're asking the reversal of tax cuts. All right. Let me ask you before you leave the podium. Judge Jordan, any questions for Mr. Tartt? No, thank you. OK, very well. Thank you. Mr. Ward, let's hear from you. Thank you, Your Honor. Good morning. May it please the court. J.B. Ward for the United States. I want to get to the issues that have just been addressed. I'll start if unless the panel prefers otherwise with the intended loss issue, just because we got a supplemental notice on the question. And I just wanted to make three brief points about that issue. Three reasons why we don't even need to get into the interpretive questions regarding Section 2B 1.1. The first is that the issue didn't make a difference to the district court's sentence. This report said that clearly at pages 41 to 47 of documentary 250. The second is that the issue didn't even make a difference to the guidelines calculation. The drug guidelines calculation would have produced the same sentence sentencing range regardless of how this issue shook out. And then the third is that if the panel is inclined to get to the merits, Section 2X 1.1 is reason enough. Yeah. So if for some reason we were to get to that seems unlikely. I agree. You would agree. We could just follow the first circuit on that. I agree entirely, Your Honor. What do you say about the tax accountant issue? It seems like to me that seems like a problem. Yeah. So I don't think there was an abuse of discretion in the denial of the mistrial motion. And for a couple of reasons, the jury didn't indicate that it couldn't follow the instruction or didn't follow the instruction. The curative instruction was thorough. And I think that's a that's a point that you're honoring in the Nicholson case. A couple of years ago, you noted the court considers in determining whether there was an abuse of discretion in denying the mistrial. The curative instruction came in two different places. I actually read the record sort of the opposite of the way my my friend reads it. I think the fact that the jury asked a question of the district court the following day indicates that the testimony wasn't material to the to the to the jury. Not that that the curative instruction was ineffective. But either way, the district court gave that curative instruction twice and also indicated on the record that the jury indicated the jurors indicated individually that they could follow the instruction. Also, the testimony itself was was brief and it was it was unremarkable. I mean, like I looked at it and I actually understood the jury's question to be more like they didn't even know they didn't even remember the witness. They just didn't even know what they were. You know, when the judge said, you know, disregard that witness's testimony, they were like, what witness? We don't we can't remember the guy. But he says that this was the link between his client and the tax returns. What do you say about that? Well, I don't think that's that's true. And this this gets to the evidence in support of the authorization element for the sufficiency, the sufficiency issue. There was evidence linking Jennifer Murphy to the tax returns. Start with the fact that copies of the returns were found in her medical records. And yes, they were unsigned, but they were completed. And if you look at the at those copies and you compare the numbers and the figures, you compare line 17 in those returns, the partnership income amount that was that was reported there. Those numbers are the same as the numbers in the graphical prints that were provided by the IRS and came in as government exhibits. A, B and C. So the fact that the copies were at the practice provides some evidence that Jennifer Murphy was at least knew that the that the tax returns had been prepared. And we're going to say at her practice, she was the business manager of the practice. Yeah, you're right, Your Honor. Her practice and Mark Murphy's practice. Of course. And it's not just that the copies were found there. It's also that forms authorizing the use of the pen were found there. And two of those forms were attached to copies of the two of the returns at issue in this case. And those forms authorized the use of the pens for both Mark Murphy and Jennifer Murphy. But there was another tax document copy found at the medical practice, and that was for the Crystal Murphy Enrichment Organization, a Form 990 for the 2014 tax year. And that's important, we think, because that was an organization that Jennifer Murphy alone ran and controlled. She was the only signatory on the bank account and those bank account records were in evidence. And so there isn't any obvious reason why anybody else in the practice besides her would have been given that tax return copy. And attached to that tax document was another form authorizing the use of Jennifer Murphy's pen. So all of that is evidence that Jennifer Murphy was connected to, knew about, authorized the filing of the tax returns that were charged in Counts 23, 24, and 25. The last thing I would just say about the denial of a mistrial motion is it was for abuse of discretion. There was no substantial prejudice here. And as this court has said, the question on whether the curative instruction is sufficient is whether the evidence that was admitted and then excluded is so highly prejudicial as to be incurable. Yes, the Willard Tapscott's abbreviated testimony in the one sort of section that my friend refers to at the top of page 200 in document 164. Yes, that had some probative value, and I hope that all of the evidence the government offers at a trial would have some probative value. But it had very limited probative value when not connected to the tax returns that are actually at issue in this case. And Willard Tapscott didn't testify about those. On the sufficiency of the drug conspiracy conviction, just to make a couple of points about that, Your Honors. There were two illegitimate prescribing practices that were identified and established through evidence at trial. One was the presigning regularly of opioid prescriptions for patients who came month after month to get those prescriptions and never saw the doctor. And the second was disregarding clear evidence of drug dealing or drug abuse in the form of aberrant urine drug screen results. And Mark Murphy and Jennifer Murphy were both key players in both of those two practices. Your Honor, I would welcome any other questions. Jury instruction. I don't think you really I mean, they try to distinguish rule on three. What do you say about that? Thank you, Your Honor. I don't I don't believe that distinction holds and I don't have run three up and up in front of me. But the language that I have from run three before me is that the. The language from the instructions was that a person acts with willfulness only when they act voluntarily and purposefully to do something that law forbids. And then this court reasoned in run three had the jury in this case concluded that Dr. Ron or Dr. Couch believe their actions to be for a legitimate medical purpose. They could not have found the defendants made an unlawful plan and knew it's unlawful purpose, nor could they have concluded they willfully join that plan. That language was the same language that was in the instruction. In our case, the jury had to find that the defendant knew the unlawful purpose of the plan and willfully joined in it. And then the purpose of the plan was defined as to dispense controlled substances without a legitimate medical purpose or outside the usual course of professional practice. So I think that the argument that is being made today is is is foreclosed by run three. I also think that the instruction was just sound on its own. Could you could you answer one thing that is kind of confusing to me about the case is the charred the count that the district court throughout. What's the connection between the the. Could you just explain that to me. I'm sorry, let me make sure I understand you're asking what the connection was between the count of the substantive count that was vacated and the conspiracy count.  I don't think I guess I guess here's here's here's the issue. Usually, you know, you've got a substantive crime right and then a conspiracy to commit the substantive crime right right and that's the way I thought this worked out to am I wrong about that. You're right that there was a conspiracy to commit the crime, and then there were certain instances certain substantive, you know, executions of or instances of that conspiracy crime that were charged as counts to three and four. Right. So, I forget which count the district court vacated. I think it was I think two and four were acquittals and count three was okay. So you have a situation where they're convicted of a conspiracy but they're not convicted of any substantive offenses right that's true your honor, and it just seems, you know, you don't that's not necessarily a problem because you can conspire and actually never commit the crime right but doesn't the fact that the district court throughout one of the substantive counts. How does, how does the, I guess, maybe the right way to formulate this question is, if there was a problem with that substantive count that required the district court to reject it. Why doesn't that problem bleed over to the conspiracy to commit the substance of account. I see. Yes, I think it's because the jury instruction for the substance of account was was problematic given to run to the jury instruction for the conspiracy wasn't. So, and I don't and I want to be clear that the two sets of instructions were not internally inconsistent so the, the instruction that was given for the substantive counts. Just impose this as an objective mens rea requirement, the doctor prescribed controlled substances that were without without a legitimate medical purpose or were outside the usual course practice and after run to we now know that there is a subjective mens rea component, and so the conspiracy instruction survived in run three and it survived in the court below, because it imposed an additional subjective mens rea overlay on top of the instruction given for the substantive count. So there was a willfulness element to it, you had to know the unlawful purpose of the plant and willfully join in it, and the court in run three and the district court below reason, you can't do that, unless you know that the prescription is without a legitimate medical purpose or outside the course of practice. Okay. All right, Judge Jordan Do you have any questions for Mr. Ward. I have one yes thank you. The government. The government charged the conspiracy. And that trial tries to paint as a pill mill with hundreds of patients who could not have been properly about. Given how the government. The medical practice that. Why weren't the Murphy's in good care. Okay, so I think you've got it Mr Ward, and I think the reason for the pauses the judge Jordan mentioned to me before court started that he was getting a lot of feedback on his end, so I don't think in the silence as you missed anything. I think there were pauses but the, I think you've got the entire text of this question. Okay, perfect. I understand. So, let me address the factual element of the question and then and then the legal element of the question on the facts. The government would would submit that that's not, that's not what the government charged or argued or proof the government didn't ever use the word that was saying my friends comment, never use the word pill. And the government didn't. You didn't use those words but that's exactly how you try to portray the practice. You said it was disheveled. That it that it was dirty. And that there were hundreds of patients. Every day. And those patients could not have been properly. You, you did not focus. A handful of people. Go ahead. Thank you. Your Honor, you're right that we didn't focus entirely on a handful of patients but the theory at trial was that, that the practice regularly issued illegitimate prescriptions based on the, on the evidence that Mark Murphy wasn't seen a very substantial population of those patients for visits each month, but we can see that the government acknowledged that he did see some patients, everyone. In fact, that came through in through employee testimony and patient testimony, Mark Murphy was one doctor running a to clinic practice. He went to cater on Mondays and Wednesdays he went to Madison on Tuesdays and Thursdays patients came every day. Patients got their prescriptions, every four weeks, and patients generally scheduled appointments on the same weekday each time, so you could be a patient going to the cater every Monday and see Mark Murphy every month. You could also be a cater patient on Tuesdays or Thursdays and go months or years without ever seeing a doctor, and that was the issue at trial and that was the issue that Mark Murphy's evidence wouldn't have wouldn't have countered, because it was totally compatible with the, with the theory that was advanced by the government at trial. And the other thing that I would. If, if that evidence was compatible government theory. Why weren't they allowed. Well, I do think your honor that the evidence that Mark Murphy sought to offer would have been inadmissible under this course decision in round one inadmissible under this course decision in a photo, but inadmissible under this course decision in round three, which it footnote one folds in round one and says nothing in the Supreme Court's decision in round two affects our consideration of the issues in round one, other than. Other than the mens rea, and the jury instruction issue. It's also consistent with this court's precedents in cases like Eleanor and tomato Marrero the Fifth Circuit case that this court favorably cited and Eleanor, those are all cases that support the position here but in any event, any any error would would of course be harmless. Thank you, Judge Jordan any follow up. No, thank you very much. Okay, very well. Thank you very much. All right, Mr Yarbrough you've got three minutes of rebuttal time remaining. Thank you. Let me quickly deal with two items. Since we're fresh on it. The, the issue about the pill mill is correct but on page 32 of our original brief. The words that are taken from the transcript include profit center machine crime hub prescription shop and assembly line all these phrases were used during the trial to describe Dr Murphy's practice, and it just provides more indication of how harmful it was to our case in the defense of Dr. Murphy, that we were not allowed to rebut the generalizations that were made by the government throughout the two weeks of proof. Also to judge grassroots question is correct, of course, um, but on page 20 of our reply brief I think we conceded the error that it would should have been a 35. Thank you. And just to conclude, and maybe rebut a little bit what your award said Tennessee we call general. The problem with this case. They please the court is simply this. The prosecution seem to have a template that wanted to make Dr Murphy's practice look bad. And because they had no direct proof of an illicit sale under the table stuff and so on that now I'm talking about the kickback, I realized they had a little proof on that I'm talking about the conspiracy case they 41. Because they didn't have that type of proof it seems to us on behalf of Dr Murphy that what was done was again paint with a broad brush, make you make it look bad. Give the jury a generally negative view of the practice, so that the conspiracy account would be strengthened. And yet, despite the charge that was given which was incorrect only one of the three substantive counts resulted in a conviction, which shows that the jury was was was really paying attention. And had they had that additional proof. How do we know and how does anybody else know what their verdict would have been on that conspiracy account will never know, because the proof was not allowed. When proof is not allowed in a circumstantial evidence case I would submit to the court that it has to be absolutely certain that that ruling was correct. If there's reasonable doubt about it if there is is concerned about it as it clearly is on this court, then a reversal is mandated. Under all the circumstances. Very well, Judge Jordan any follow up for Mr. Thank you. No, thank you. Okay, very well. That case is submitted. Thank you guys.